UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MASON MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| OFFICER MICHAEL SCHMITT, | ) | |
| in his individual capacity | ) | |
| | ) | |
| CORPORAL JERRY M. PEDIGO, | ) | **PLAINTIFF DEMANDS** |
| in his individual capacity, and | ) | **JURY TRIAL** |
| in his official capacity, | ) | |
| | ) | |
| CAMDEN COUNTY, MISSOURI | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES**
**FOR FEDERAL CIVIL RIGHTS VIOLATIONS AND STATE LAW ASSAULT**

Plaintiff Mason Murphy, by counsel W. Bevis Schock, states for his Complaint (a) under

42 U.S.C. 1983 for False Arrest and Retaliation for Exercise of First and Fifth Amendment

Rights, (b) under *Monell* for Policymaker Participation, Unofficial Custom, Failure to Train, and

Failure to Supervise, and (c) under state law for assault:

**INTRODUCTION**

1.      Mason Murphy was walking with traffic on Route F in Camden County.  Sunrise Beach

Officer Michael Schmitt demanded that Murphy identify himself.  Murphy refused.

Schmitt arrested Murphy.  No one else has been arrested for walking with traffic.

Camden County jail officers then made threats against Murphy for refusing to identify

himself.  In retaliation for arguing, Jail Supervisor Jerry Pedigo assaulted Murphy by

threatening to immediately punch him in the face.  Murphy sues Schmitt for False Arrest,

Schmitt and Pedigo for Retaliation for Exercise of First Amendment Rights, Pedigo for Assault, and Camden County under *Monell* pursuant to Policymaker Participation.

## PRELIMINARY ALLEGATIONS

### Parties

2.     Plaintiff Mason Murphy is an individual residing in Camden County, Missouri.

3.     Defendant Officer Michael Schmitt was at the time of the incident a police officer for Sunrise Beach a municipality in Camden County.  Plaintiff sues Schmitt in his individual capacity only.

4.     At all relevant times Defendant Supervisor Jerry M. Pedigo was the Jail Supervisor for the Camden County Sheriff's Department, and the policy maker for the jail and detainee intake.  Plaintiff sues Pedigo in his individual capacity and in his official capacity.

5.     Camden County is a properly formed county in the State of Missouri.

### Jurisdiction and Venue

6.     Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 and § 1988; and the First, Fourth and Fourteenth Amendments to the United States Constitution.

7.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 2201, with 42 U.S.C. §1983 and 42 U.S.C. 1988 being the statutes at issue.

8.     Venue is proper in this Court under 28 U.S.C. § 1391 because the events which occurred are in Camden County, Missouri, which is within the Central Division of this Court.

9.     This court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

### Color of State Law

10.     At all relevant times, all Defendants acted under color of state law.  Particularly, at all

2

relevant times, each Defendant acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri.

## Jury Demand

11.  Plaintiff demands a jury trial on his claims for damages.

## FACTS

12.  Murphy was walking on northbound Route F in Camden County on May 15, 2021 at approximately 9:30 p.m.  He was a few hundred yards south of Route F's intersection with Route 5.

13.  At that location there is a broad shoulder.

14.  Murphy was walking in the shoulder on the right side of the road, with traffic.

15.  Murphy was in no way stumbling or giving any indication that he was impaired or in need of police assistance.

16.  Sunrise Beach Officer Michael Schmitt was driving his patrol vehicle on northbound Route F approaching Murphy's location.

17.  Schmitt stopped his vehicle and exited his vehicle.

18.  The ensuing events for the next hour, until Schmitt leaves the Camden County Jail after an hour and three Minutes have elapsed, are on audio and video tape, available at:

    https://www.youtube.com/watch?v=ZhdaU4q22fY

19.  Schmitt approached Murphy on foot.

20.  RSMo. 300.405.2 requires pedestrians to walk against traffic when practicable, that is, on the left shoulder, not the right shoulder of the highway.

21.  A reasonable opportunity for further investigation or discovery will show that no one else in recent memory has been detained or arrested by any law enforcement officers in either

3

Sunrise Beach or Camden County for walking on the wrong side of the road in violation of RSMo. 300.405.2.

22. At the relevant time, walking on the wrong side of the road was therefore not an offense which would justify a *Terry* stop.

23. As the interaction was beginning, Schmitt had no reasonable suspicion that a crime had occurred and that Murphy had committed it.

24. Schmitt demanded that Murphy identify himself.

25. Schmitt was then using language or intonation indicating compliance was necessary.[1]

26. Due to the actions of Schmitt a reasonable person in Murphy's position would not then have thought himself free to go.[2]

27. Schmitt never told Murphy he was free to go.

28. Murphy had no duty to speak to the officer in any way whatsoever, and had a lawful right to terminate the interaction.[3]

29. Schmitt was then detaining Murphy unlawfully.

30. Murphy declined to identify himself.

31. Schmitt stated that "I am not trying to charge you, just trying to tell who you are."

32. Murphy and Schmitt argued for approximately 9 minutes during which time Murphy continued to refuse to identify himself.

33. At minute 2 Schmitt stated that Murphy was walking on the wrong side of the road.

34. At minute 5 Schmitt stated that he had a right to know Murphy's identity because Murphy was "walking down the highway."

---

[1] *United States v. Davis*, No. 8:10CR438, 2011 WL 1456147, at *5 (D. Neb. Mar. 15, 2011).
[2] *United States v. Guerrero*, 374 F.3d 584, 589–90 (8th Cir. 2004).
[3] *United States v. Hester*, 910 F.3d 78, 84 (3d Cir. 2018).

4

35.     Murphy was in no way combative.

36.     Throughout the discussion Murphy was steady on his feet at all times, and no reasonable

        officer would think that his balance was impaired in any way.

37.     Murphy over and over asked why he was being detained, and over and over Schmitt

        refused to provide a reason, and instead demanded to know Murphy's identity.

38.     Murphy did not use sexually obscene speech or fighting words, nor did he disturb the

        peace.[4]

39.     Criticism of law enforcement officers, even with profanity, is protected speech.[5]

40.     Throughout the 9 minute conversation, however, a reasonable person in Murphy's

        position would not then have thought himself free to go.

41.     At the end of the approximately 9 minutes, Schmitt still did not have and never had had a

        reasonable suspicion that a crime had occurred, and Murphy had committed it, other than

        walking on the wrong side of the road, for which pursuant to officer discretion persons

        are not arrested.

42.     After the 9 minutes of argument Schmitt put Murphy in handcuffs and put him in

        Schmitt's patrol car.

43.     At that time, Schmitt had no lawful reason to handcuff Murphy, because Schmitt had no

        reasonable suspicion that a crime had occurred and that Murphy had committed it.

44.     Moments later Murphy's girlfriend, Taylor Semb, drove up and had a conversation with

        Schmitt about Murphy's circumstances.

---

[4] *Cf. Webb v. English,* 3:19-cv-00975-MMH-JBT (M.D. Fla. Sept. 23, 2021).
[5] *See City of Houston, Texas v. Hill,* 482 U.S. 451, 461 (1987); *Hoyland v. McMenomy,* 869 F.3d
644 (8th Cir. 2017).

5

45. Schmitt accused Semb of interfering with his investigation and demanded that she move on.

46. Semb drove off a short distance.

47. There ensued further continuous argument between Schmitt and Murphy, all over the issue of Murphy identifying himself, and with Murphy continually demanding to know the legal reason for his detention.

48. Schmitt gave no clear answer as to why he had stopped Murphy, put Murphy in handcuffs, or put Murphy in the patrol car.

49. At minute 17 Schmitt admitted he "doesn't smell anything," that is, Schmitt admits Murphy does not have alcohol odor on his breath.

50. Schmitt then drove down the road a short distance in his patrol car, with Murphy in handcuffs in the back seat, to where Semb was by then located.

51. Schmitt eventually ran a record check on Semb and at minute 18 she came back clean.

52. Schmitt again demanded to Semb that she make Murphy identify himself and to "talk some sense into him."

53. Schmitt and Semb walked to the patrol car where Murphy was in handcuffs in the back seat and opened the patrol car door.

54. Murphy immediately demanded to know why he was being detained.

55. Schmitt shut the patrol car door without answering.

56. Schmitt told Semb she was free to go.

57. Schmitt soon set off to the Camden County Sheriff's jail with Murphy in the back seat, still in handcuffs.

6

58. At the time Officer Schmitt drove off with Murphy in handcuffs in the patrol car Murphy became an arrestee.

59. During the drive, at minute 19 on the tape, Murphy demanded, as he had demanded previously, to know his charges and asked "what crime did I commit?"

60. Schmitt said "Failure to Identify."

61. In a voluntary interaction, not a *Terry* stop, the subject has an absolute right at any time to terminate the discussion for any reason or no reason.[6]

62. At that time, "Failure to identify" was not a crime, and not a lawful reason to detain Murphy.

63. At minute 23, still during the drive, Schmitt stated on his police radio that Murphy had been stumbling and walking on the wrong side of the road.

64. Murphy had never stumbled.

65. Plaintiff acknowledges that walking with traffic on a highway, as Plaintiff was doing, violates RSMo. 300.405.2.

66. At the time Schmitt had no idea he could charge Murphy with walking on the wrong side of the road.

67. A reasonable officer in Schmitt's position at that time would have known that he could have charged Murphy with walking on the wrong side of the road.

68. A reasonable opportunity for further investigation or discovery will show that no one else in recent memory has been detained or arrested by any law enforcement officers in either Sunrise Beach or Camden County for walking on the wrong side of the road.

---

[6] *United States v. Hester*, 910 F.3d 78, 84 (3d Cir. 2018).

7

69. Later, at the station, at minute 49, Schmitt stated he would go to the local Prosecuting Attorney and ask what charges he could file.

70. During the drive Murphy told Schmitt that Schmitt was "fucking up", and had "no education to become a cop," and was a "retard."

71. At one point Murphy asked Schmitt if he was "ok?"

72. During the drive at minute 20 Schmitt stated over the radio that Murphy was combative.

73. The video tapes prove that Murphy was argumentative and insulting but never combative.

74. At minute 26 Schmitt called Murphy a "dumb ass."

75. Murphy responded that Schmitt was a "punk bitch with a badge."

76. Schmitt then stated, falsely, that Semb had called Murphy a "piece of shit."

77. At minute 35 Schmitt's patrol car entered the jail sally port.

78. Schmitt then exited the patrol car, leaving Murphy in the back seat in cuffs.

79. Schmitt then initiated a phone call to a person unknown to Plaintiff, although pursuant to context it appears that the person on the other line was some sort of colleague or superior to whom Schmitt had called for advice.

80. Only Schmitt's side of the call is audible.

81. Schmitt stated during the call that he had arrested Murphy because he "saw the dip shit walking down the highway and would not identify himself" and he "ran his mouth off."

82. At minute 36 Schmitt asked, "What can I charge him with?"

83. At minute 37 Schmitt admitted, "I can't smell anything on him."

84. At minute 39 Schmitt took Murphy into the Camden County Sheriff's Department.

85. There were then approximately four officers in the room, including Schmitt, Pedigo and two officers unknown to Plaintiff.

8

86. Murphy demanded to know why he was under arrest.

87. The officers would not answer but did keep demanding, over and over, that Murphy identify himself.

88. Throughout the time at the jail Murphy violated no jail regulations or rules.

89. Throughout this period various deputies, including Pedigo, berated Murphy.

90. Several times Schmitt stated that Murphy was drunk.

91. Murphy was not drunk.

92. At minute 42 in retaliation for Murphy refusing to identify himself, Pedigo stated that he was going to punch Murphy in the face.

93. Murphy asked if the event was being recorded and Pedigo answered yes.

94. Murphy then asked whether Pedigo was really going to punch him in the face.

95. Pedigo reiterated to Murphy that he was going to punch him in the face.

96. There was no purpose for immediate threat from Pedigo to punch Murphy in the face related to officer safety, whether Pedigo's or another officer's. The statement was also not a reasonable means to maintain institutional safety and to preserve internal order.[7]

97. Pedigo delivered his threats in a manner in which would make a reasonable person believe that Pedigo was about to cause Murphy bodily harm.

98. Murphy reasonably believed that he was under immediate threat of bodily harm

99. A punch to the face is more than a de minimis injury.[8]

100. Pedigo thereby committed the state law crime of Assault, Fourth Degree, placing another in apprehension of immediate physical injury, RSMo. 565.056.1(3).

---

[7] *Hollingsworth v. City of St. Ann,* 800 F.3d 985, 990 (8th Cir. 2015)
[8] *Id.* at 990-91.

101. Pedigo thereby made himself civilly liable for assault, MAI 23.01.

102. On information and belief Pedigo was later fired for his threats to punch Murphy in the face.

103. At minute 43 Schmitt said, "Put him on a12", by which Schmitt meant he was asking for his colleagues assistance in completing the necessary paperwork to hold Murphy for 12 hours.

104. At minute 45 Schmitt stated to Murphy, "I suspected you were under something. For your safety I wanted to check you out and know who you are."

105. During the video Murphy engaged in no actions which would have led a reasonable officer to believe Murphy was intoxicated or "under something."

106. When Schmitt encountered Murphy on the highway Schmitt had no reason to believe Murphy was "under something."

107. Murphy had not consumed alcoholic beverages or any other intoxicating substance that day or that evening.

108. Murphy did not make any false statements or apparently false statements.

109. Officers removed Murphy's wallet from his person.

110. At minute 49 officers locked Murphy in a cell.

111. At minute 50 Schmitt admitted Murphy did not appear intoxicated.

112. At minute 50, after the parties were at the jail, another officer asked Schmitt "do you have resisting?"

113. Schmitt responded "Not really. Hard to get in the car and had to pull him in from the other side."

Case 2:21-cv-04195-MDH   Document 1   Filed 10/19/21   Page 10 of 22

114. At minute 53 Officers used a credit card which had been in Murphy's wallet to determine Murphy's identity.

115. At minute 55 Schmitt called Murphy a "fucking retard."

116. At minute 56 Schmitt said Murphy could "sit here for being an asshole."

117. At minute 57 Schmitt initiated a phone call to Morgan County for a record check on Murphy, stating "please let there be a warrant".

118. At minute 58 Murphy came back clean and in response Schmitt said "damn".

119. At minute 61 Schmitt stated "I didn't want him walking down my highway."

120. At minute 61 Schmitt exited the jail, got back in his patrol car, and drove off.

121. Murphy remained locked in a jail cell for approximately two hours.

122. Officers then released Murphy.

123. Murphy was never charged with any crimes or offenses in connection with the incident.

124. The actions of Schmitt in his interaction with Murphy, particularly Murphy's detention and arrest, in the totality of the circumstances, show that Schmitt's detention and arrest of Murphy was made in retaliation for Murphy exercising his rights under the First and Fifth Amendments to argue with the police.[9]

125. The actions of Pedigo in his interaction with Murphy, in the totality of the circumstances, show that Pedigo's threats to punch Murphy in the face were made in retaliation for Murphy exercising his rights under the First and Fifth Amendments to argue with the police.

126. Schmitt had no warrant to arrest Murphy.

---

[9] *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).

127.   Missouri has no law making it a crime for a subject to refuse to identify himself to a law enforcement officer.

**RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS**

**Schmitt**

128.   Murphy's non-combative arguing with the police was constitutionally protected by the First Amendment and the Fifth Amendment.

129.   The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out.[10]

130.   Missouri's non-combative arguing with the police was the but for cause of Plaintiff's arrest.[11]

131.   Causation is generally a jury question.[12]

132.   In the alternative, others have not been arrested for walking with traffic.[13]

133.   This was a circumstance where officers have probable cause to make arrests, but typically exercise their discretion not to.[14]

134.   At all times, from the initial contact through the time at the station, Murphy did not make any false statements or apparently false statements.[15]

135.   At all times, from the initial contact through the time at the station, Murphy did not behave evasively.[16]

---

[10] *Hartman v. Moore*, 547 U.S. 250, 256 (2006).
[11] *Nieves v. Bartlett*, 587 U.S. ——, 139 S. Ct. 1715, 1722 (2019), cited favorably in *Graham v. Barnette*, 5 F.4th 872, 889 (8th Cir. 2021)
[12] *Graham v. Barnette*, 5 F.4th 872, 889 (8th Cir. 2021)
[13] *Nieves v. Bartlett*, 587 U.S. ——, 139 S. Ct. 1715, 1724 (2019).
[14] *Nieves v. Bartlett*, 587 U.S. ——, 139 S. Ct. 1715, 1724 (2019), cited favorably by *Just v. City of St. Louis, Missouri*, 7 F.4th 761, 769 (8th Cir. 2021)
[15] *United States v. Arredondo*, 996 F.3d 903, 909 (8th Cir. 2021) (Gruender, J., dissenting).
[16] *United States v. Arredondo*, 996 F.3d 903, 909 (8th Cir. 2021) (Gruender, J., dissenting).

136. At all times, from the initial contact through the time at the station, there was no practical, nontechnical probability that incriminating evidence was involved.[17]

137. Walking on the wrong side of the road occurs all the time on the highways with wide shoulders, and the police rarely, if ever, arrest a person for walking on the wrong side of the road, but did arrest Murphy who just has been protesting police conduct.[18]

138. Schmitt's detention and arrest of Murphy were adverse actions which would chill a person of ordinary firmness from arguing with the police.

139. Schmitt's detention and arrest of Murphy were as motivated by Murphy's exercise of the protected activity of arguing with the police.

140. Murphy's walking on the wrong side of the road was insufficient to provoke the adverse consequence of arrest, particularly because others have not been arrested for the same conduct.[19]

141. Schmitt does not have qualified immunity for his detention and arrest of Murphy.

### Pedigo

142. Pedigo's assault on Murphy was an adverse action which would chill a person of ordinary firmness from arguing with the police.

143. Pedigo's assault on Murphy was motivated at least in part by Murphy's exercise of the First Amendment protected activity of arguing with the police.

144. Pedigo had no lawful right to assault Murphy.

### MONELL

### Policymaker Participation

---

[17] *United States v. Arredondo*, 996 F.3d 903, 910 (8th Cir. 2021) (Gruender, J., dissenting).
[18] *Brown v. Trump*, 18-CV-00389, Doc 131, June 14, 2021.
[19] *Nieves v. Bartless*, 139 U.S. 1715, 1727 (2019).

145. Pedigo, as the jail supervisor, was the policy maker for the Camden County jail.[20]

146. Camden County's unconstitutional governmental policy may be inferred from the single decision by Pedigo to assault Plaintiff.

147. Pedigo possessed final authority to establish municipal policy with respect to the action ordered.[21]

148. Pedigo was the highest official responsible for setting policy in that area of the government's business.[22]

149. Pedigo was a policy maker not a mere decision maker.

150. There was no written policy supporting assaulting arrestees in the jail in retaliation for exercise of First Amendment rights.

151. Pedigo's deliberate choice, as the jail supervisor, to follow the course of action of assaulting Murphy, in retaliation for exercise of First Amendment rights, made from among various alternatives, made him the person responsible for establishing final policy with respect to the assault in retaliation for exercise of First Amendment rights to argue with the police, and therefore his action was a policy of Camden County.[23]

152. The assault in retaliation for exercise of First Amendment rights to argue with the police was a constitutional violation.

153. Camden County therefore itself caused the constitutional violation.

**CAUSATION**

---

[20] Whether Pedigo was the policy maker is a question of state law, for the court. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013)

[21] *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016)

[22] *Stockley v. Joyce*, 963 F.3d 809, 823 (8th Cir. 2020); *Bernini v. City of St. Paul,* 665 F.3d 997, 1007 (8th Cir. 2012).

[23] *Stockley v. Joyce*, 963 F.3d 809, 823 (8th Cir. 2020); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)

14

154.    Murphy's exercise of his First Amendment right to argue with the police proximately caused Murphy's damages.

155.    The Camden County Sheriff's Department's Policymaker Participation proximately caused Murphy's damages.

## DAMAGES

156.    At the time of his assault Murphy suffered fear.

157.    Murphy continues to suffer lack of confidence in law enforcement.

158.    Murphy has not sought treatment from mental health professionals.

159.    Murphy suffered garden variety emotional distress.

160.    Murphy has no physical injuries.

161.    Murphy has no special damages.

## PUNITIVE DAMAGES

### Federal Claims

162.    The detention and arrest of Murphy by Schmitt in his individual capacity was malicious or recklessly indifferent to Plaintiff's constitutional rights.

163.    The assault of Murphy by Pedigo in his individual capacity was malicious or recklessly indifferent to Plaintiff's constitutional rights.

164.    The purpose of punitive damages is deterrence and retribution.[24]

165.    The misconduct of Schmitt and Pedigo was unlawful and is capable of repetition, which must be deterred.[25]

166.    An award of punitive damages would bear a reasonable relationship to the harm suffered

---

[24] *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 432 (2001).
[25] *State Farm Mut. Auto Ins. Co. v. Campbell,* 538 U.S. 408, 416-17 (2003) (quoting *Gore,* fn. 3 *below,* 517 U.S. at 568).

and to damages in similar cases.[26]

167.   Murphy is entitled to punitive damages against Schmitt in his individual capacity for his federal claims against him in his individual capacity.

168.   Murphy is entitled to punitive damages against Pedigo in his individual capacity for his federal claims against him in his individual capacity.

**State Law Claim**

169.   Pedigo's assault on Murphy shocks the conscience and was reprehensible conduct.

**NO QUALIFIED IMMUNITY FOR FEDERAL RETALIATORY ARREST CLAIMS**

170.   The right to be free from Retaliation for Exercise of First Amendment Rights is well established.[27]

171.   Neither Schmitt nor Pedigo has qualified immunity for Plaintiff's federal retaliation claims.

**NO OFFICIAL IMMUNITY FOR PEDIGO ON STATE LAW CLAIM**

172.   Pedigos' acts were willful and wanton.

173.   Pedigo thus has no official immunity for Plaintiff's state law claim.[28]

**§ 1988 ATTORNEY'S FEES AND COSTS FOR FEDERAL CLAIMS**

174.   In pursuit of these claims, Murphy is incurring reasonable statutory attorney's fees, taxable costs, and non-taxable costs compensable under 42 U.S.C. § 1988.

**COUNT I**
**FEDERAL CLAIM**
**AGAINST MICHAEL SCHMITT**
**IN HIS INDIVIDUAL CAPACITY**
**FOR UNLAWFUL DETENTION**

---

[26] *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574-86 (1996).

[27] *Garcia v. City of New Hope*, 984 F.3d 655, 669 (8th Cir. January 5, 2021), and many other cases.

[28] *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 448 (Mo. 1986)

16

## RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS

175. Plaintiff incorporates all prior paragraphs.

176. Murphy did not stumble at any time.

177. The stop of Murphy by Schmitt was not a *Terry* stop and therefore Schmitt had no right to ask Murphy for identification.[29]

178. *First*, Schmitt's detention of Murphy during the approximately 17 minutes from the start of the encounter until Schmitt drove away from the scene with Murphy in the patrol car would chill a person of ordinary firmness from continuing to remain silent, and

179. *Second*, Murphy's exercise of right to argue with the police was the but for cause of Schmitt's detention of Murphy during that time,[30] and

180. *Third*, as a direct result, Murphy was damaged.[31]

181. The right to argue with the police without being subject to arrest is well established.[32]

## Punitive Damages

182. The detention of Murphy by Schmitt during that time was malicious or recklessly indifferent to Plaintiff's constitutional rights.

---

[29] *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cty.*, 542 U.S. 177, 186 (2004); *see also Abdel-Shafy v. City of San Jose* No. 17-CV-07323-LHK (N.D. Cal. Feb. 12, 2019) (subject arrested for not providing identification but had had a confrontation with another citizen at Starbucks and so officer had reasonable suspicion for *Terry* stop); *Lull v. Stewart*, No. 2:17-cv-01211-TLN-JDP (PS) (E.D. Cal Sep 2, 2021) (subject arrested for not providing identification but had parked illegally to load his kayak, so officer had reasonable suspicion for *Terry* stop); *Mucy v. Nagy*, No. 20-1950 (W.D. Penn. Aug 3, 2021), (summary judgment denied where subject had been in one car accident and had properly had his car towed and was no reasonable suspicion for *Terry* stop, and therefore plaintiff had a right not to provide identification).

[30] *Nieves v. Bartlett*, 587 U.S. ——, 139 S. Ct. 1715, 1722 (2019), cited favorably in *Graham v. Barnette*, 5 F.4th 872, 889 (8th Cir. 2021).

[31] 8th Cir Model Jury Instructions, 4.40; *Garcia v. City of New Hope*, 984 F.3d 655, 669 (8th Cir. 2021); *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014)

[32] *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).

17

183. Plaintiff is entitled to punitive damages for the purposes of (1) punishing Schmitt for engaging in misconduct and (2) deterring discouraging Schmitt and others from engaging in similar misconduct in the future.[33]

**Prayer**

WHEREFORE Plaintiff Mason Murphy prays for compensatory damages against Michael Schmitt in his individual capacity for Retaliation for Exercise of First Amendment Rights in a fair and reasonable amount, for punitive damages against Pedigo in his individual capacity in a fair and reasonable amount, and for costs and reasonable attorney's fees, and for such other relief as the court finds to be just, meet and reasonable.

**COUNT II**
**FEDERAL CLAIM**
**AGAINST MICHAEL SCHMITT**
**IN HIS INDIVIDUAL CAPACITY**
**FOR FALSE ARREST IN**
**RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS**

184. Plaintiff incorporates all prior paragraphs.

185. Plaintiff did not stumble when Schmitt first saw him.

186. During the 17 minutes from the start of the encounter until Schmitt put Murphy in the patrol car, Murphy had stood without difficulty balancing and with no odor, and as a result there was never reasonable suspicion for a *Terry* stop.

187. *First*, Schmitt's arrest of Murphy when Schmitt drove away from the scene with Murphy in the patrol car would chill a person of ordinary firmness from continuing to remain silent, and

---

[33] 8th Cir Model Jury Instructions, 4.72.

18

188. *Second*, Murphy's exercise of right to argue with the police was the but for cause of Schmitt's arrest of Murphy,[34] and

189. *Third*, as a direct result, Murphy was damaged.[35]

190. The right to argue with the police without being subject to arrest is well established.[36]

## Punitive Damages

191. The arrest of Murphy by Schmitt was malicious or recklessly indifferent to Plaintiff's constitutional rights.

192. Plaintiff is entitled to punitive damages for the purposes of (1) punishing Schmitt for engaging in misconduct and (2) deterring discouraging Schmitt and others from engaging in similar misconduct in the future.[37]

## Prayer

WHEREFORE Plaintiff Mason Murphy prays for compensatory damages against Michael Schmitt in his individual capacity for Retaliation for Exercise of First Amendment Rights in a fair and reasonable amount, for punitive damages against Pedigo in his individual capacity in a fair and reasonable amount, and for costs and reasonable attorney's fees, and for such other relief as the court finds to be just, meet and reasonable.

## COUNT III
## FEDERAL CLAIM
## AGAINST JERRY M. PEDIGO
## IN HIS INDIVIDUAL CAPACITY
## FOR ASSAULT IN
## RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS

---

[34] *Nieves v. Bartlett*, 587 U.S. ——, 139 S. Ct. 1715, 1722 (2019), cited favorably in *Graham v. Barnette*, 5 F.4th 872, 889 (8th Cir. 2021).
[35] 8th Cir Model Jury Instructions, 4.40, *Garcia v. City of New Hope*, 984 F.3d 655, 669 (8th Cir. 2021), *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014)
[36] *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).
[37] 8th Cir Model Jury Instructions, 4.72.

19

193. Plaintiff incorporates all prior paragraphs.

194. *First*, Pedigo's assault on Murphy would chill a person of ordinary firmness from continuing to remain silent, and

195. *Second*, Pedigo's assault on Murphy was motivated at least in part by Murphy's exercise of his right to remain silent, and

196. *Third*, as a direct result, Murphy was damaged.[38]

197. A person who is arrested has a well-established right to remain silent.

### Punitive Damages

198. The assault by Pedigo was malicious or recklessly indifferent to Plaintiff's constitutional rights.

199. Plaintiff is entitled to punitive damages for the purposes of (1) punishing Defendant Pedigo for engaging in misconduct and (2) deterring discouraging Defendant Pedigo and others from engaging in similar misconduct in the future.[39]

### Prayer

WHEREFORE Plaintiff Mason Murphy prays for compensatory damages against Jerry M. Pedigo in his individual capacity for Retaliation for Exercise of First Amendment Rights in a fair and reasonable amount, for punitive damages against Pedigo in his individual capacity in a fair and reasonable amount, and for costs and reasonable attorney's fees, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT IV
### STATE LAW CLAIM
### AGAINST JERRY M. PEDIGO
### IN HIS INDIVIDUAL CAPACITY

---

[38] 8th Cir Model Jury Instructions, 4.40, *Garcia v. City of New Hope*, 984 F.3d 655, 669 (8th Cir. 2021)

[39] 8th Cir Model Jury Instructions, 4.72.

**ASSAULT**

200. Plaintiff incorporates all prior paragraphs.

201. *First*, Defendant Pedigo told Plaintiff he was going to punch him in the face with the intent to cause plaintiff apprehension of bodily harm, and

202. *Second*, defendant thereby caused plaintiff to be in apprehension of bodily harm.[40]

**Punitive Damages**

203. Defendant Pedigo's conduct was outrageous because of defendant's evil motive or reckless indifference to the rights of others.[41]

**Prayer**

WHEREFORE Plaintiff prays the Court for judgment against Defendant Pedigo in his individual capacity under state law for compensatory and punitive damages for assault plus Plaintiff's taxable costs, and for such other relief as may be just, meet and reasonable.

**COUNT V**
**FEDERAL CLAIM**
**AGAINST CAMDEN COUNTY**
**POLICYMAKER PARTICIPATION**

204. Plaintiff incorporates all prior paragraphs.

205. *First*, Defendant Pedigo told Plaintiff he was going to punch him in the face with the intent to cause plaintiff apprehension of bodily harm, in retaliation for exercise of first amendment rights, and

206. *Second*, defendant thereby caused plaintiff to be in apprehension of bodily harm.[42]

207. *Third,* as a direct result, Murphy was damaged.

---

[40] MAI 23.01, *Hickey v. Welch*, 91 Mo.App. 4, 14 (1901)
[41] MAI 10.01
[42] *Stockley v. Joyce*, 963 F.3d 809, 823 (8th Cir. 2020); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

**Prayer**

WHEREFORE Plaintiff Mason Murphy prays for compensatory damages against

Camden County for Retaliation for Exercise of First Amendment Rights in a fair and reasonable

amount due to policymaker participation, and for costs and reasonable attorney's fees, and for

such other relief as the court finds to be just, meet and reasonable.

Respectfully submitted,
Co-Counsel for Plaintiff

    /s/ W. Bevis Schock   .
W. Bevis Schock, MBE # 32551
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322